IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ARCONIC CORPORATION,<br>NAVISTAR, INC., and<br>FORD MOTOR COMPANY,<br><br>Defendants. | Civil Action No. 1:24-cv-285 |

# COMPLAINT

The United States of America, by authority of the Attorney General of the United States, acting at the request and on behalf of the United States Environmental Protection Agency ("EPA"), through the undersigned attorneys, files this complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought by the United States (the "Plaintiff") against Defendants Arconic Corporation ("Arconic"), Navistar Inc. ("Navistar"), and Ford Motor Company ("Ford") (collectively the "Defendants") pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607. The United States seeks to recover costs incurred for response activities undertaken in response to the release and threatened release of hazardous substances at or from the A.A. Oil Site, a former waste oil collection, storage, and transfer facility in Indianapolis, Indiana (the "Site").

1

2. The United States also seeks a declaratory judgment that the Defendants are liable for future response costs that the United States may incur in connection with response actions that may be performed at the Site pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2).

3. Defendants arranged for the disposal and/or treatment of hazardous substances at the Site. The United States has incurred more than $2.5 million in net, unreimbursed past response costs at the Site. Pursuant to CERCLA, each of the above-named Defendants is jointly and severally liable for these unreimbursed past response costs. In addition, the United States is statutorily entitled to an entry of a declaratory judgment against each of the above-named Defendants for any future response costs that the United States may incur at the Site.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to Sections 113(b) and (e) of CERCLA, 42 U.S.C. § 9613(b) and (e), and 28 U.S.C. §§ 1331 and 1345. This Court also has personal jurisdiction over the Defendants.

5. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1391(b) and (c) because the claims arose and the threatened and actual releases of hazardous substances occurred in this district.

## DEFENDANTS

### Arconic

6. Defendant Arconic Corporation is a Delaware corporation with its principal place of business in Pennsylvania.

7. Arconic Corporation is a legal successor to relevant liabilities of a Pennsylvania corporation known at various times as the Aluminum Company of America and Alcoa Inc.

    a. In 2016, Alcoa Inc. was separated into two independent, publicly traded successor companies: (i) Alcoa Inc., which changed its name to Arconic Inc; and (ii) Alcoa Corporation.

    b. In 2018, the Pennsylvania corporation known as Arconic Inc. was merged into a Delaware corporation known as Arconic Inc.

    c. In 2020, Arconic Inc. was separated into two independent, publicly traded successor companies: (i) Arconic Inc, which was renamed Howmet Aerospace Inc.; and (ii) Arconic Corporation.

8. Arconic Corporation and its corporate predecessors – including the Aluminum Company of America and Alcoa Inc. – are referred to collectively herein as "Arconic."

Navistar

9. Defendant Navistar, Inc. is a Delaware corporation with its principal place of business in Illinois.

10. Navistar, Inc. has been known by different names at different times and it also is a legal successor to a New Jersey corporation known as International Harvester Company.

    a. In 1966, the New Jersey corporation known as International Harvester Company was merged into the Delaware corporation known as International Harvester Corporation, and the name of the surviving Delaware corporation was changed to International Harvester Company.

    b. In 1986, the Delaware corporation known as International Harvester Company changed its name to Navistar International Corporation.

  c. As part of a 1987 merger, the Delaware corporation known as Navistar International Company changed its name to Navistar International Transportation Corp.

  d. In 2000, the Delaware corporation known as Navistar International Transportation Corp. changed its name to International Truck and Engine Corporation.

  e. In 2008, the Delaware corporation known as International Truck and Engine Corporation changed its name to Navistar, Inc.

11. Navistar, Inc. and its corporate predecessors – including International Harvester Company – are referred to collectively herein as "Navistar."

Ford

12. Defendant Ford Motor Company is a Delaware corporation with its principal place of business in Michigan.

Other Allegations Regarding Defendants

13. At times relevant to this Complaint, each of the Defendants (or one or more of their corporate predecessors) by contract, agreement, or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by each such Defendant (or its predecessor) at the A.A. Oil Site, within the meaning of CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3).

## BACKGROUND

The Site

14. The A.A. Oil Site is located in a mixed commercial, residential, and industrial area in Indianapolis, Marion County, Indiana. It is a 1.35-acre parcel with a 1,782 square foot building and six above-ground storage tanks. The Site is surrounded by office buildings on two

sides and industrial storage facilities on two sides. There are homes about 1,200 feet from the Site and about 11,000 people live within a mile.

15. From the 1950s to the late 1980s, A.A. Oil Co., Inc., a division of Cam-Or, Inc., operated the Site as a waste oil collection, storage, and transfer facility. The waste oil was collected from garages, gas stations, oil change facilities, automobile dealers, and trucking companies, and was stored at the Site and then shipped to the Cam-Or facility in Westville, Indiana. EPA put the Cam-Or Westville facility on the National Priorities List in 1998 for a CERCLA response action.

16. The majority of the oil transported to the Cam-Or Site was used crankcase oil, which was frequently contaminated with lead and other heavy metals, and sometimes mixed with other oils, spent solvents, and/or degreasing agents. As a result, the Site is contaminated with trichloroethylene ("TCE") in the storage tanks and groundwater, polychlorinated biphenyls ("PCBs") in the soil and groundwater, and volatile organic compounds ("VOCs") like benzene, toluene, and xylenes in the soil and soil gas, among other contaminants.

    a. PCBs do not break down readily by natural processes, and the compounds bioaccumulate in the fatty tissue of animals. PCBs are probable human carcinogens and can cause non-cancer human health effects, such as reduced ability to fight infections, low birth weights, and learning disabilities.

    b. TCE is a known human carcinogen and can cause non-cancer human health effects, such as nerve damage, liver damage, kidney damage, and scleroderma, an autoimmune disease.

   c. Benzene is a known human carcinogen and can cause non-cancer human health effects to the body's reproductive, immune, nervous, endocrine, cardiovascular, and respiratory systems.

   d. Lead can affect almost every organ and system in the body, primarily targeting the nervous system. Lead is a probable human carcinogen and can cause non-cancer human health effects such as brain and kidney damage, and miscarriage in pregnant women.

These hazardous substances were found at both the Cam-Or Site and A.A. Oil Site.

 17. From 1990 to 1993, PWI Environmental, Inc. ("PWI") operated at the Site as a hazardous materials and spill response contractor. The Site was abandoned in 1993.

  Response Activities by EPA

 18. Pursuant to CERCLA, EPA and states may take "response" actions in response to the release and threatened release of hazardous substances at and from facilities, including contaminated sites. Such response actions may include "removal" actions, including site investigations, studies to plan and direct cleanup efforts, and various activities to prevent, minimize, or mitigate damage to public health, welfare, or the environment, as well as longer-term "remedial" actions consistent with permanent remedies that prevent or minimize releases of hazardous substances to protect present and future public health, welfare, and the environment.

 19. EPA conducted an assessment of the Site from July to September 2016 that culminated in a 2017 EPA Final Site Assessment Report. The Site Assessment documented several surface anomalies and samples revealed TCE in the aboveground storage tanks and groundwater, PCBs in soil and groundwater, and VOCs in soil and soil gas, among other contaminants. Subsequently, EPA collected groundwater and soil gas samples to assess the

potential for vapor intrusion into the indoor air of residential properties located downgradient of the Site. Laboratory results showed TCE above the vapor intrusion screening levels in groundwater and soil gas directly east of the Site and concluded that vapor intrusion was possible near the northernmost sample location and off-site migration of the contaminants was occurring through groundwater channels.

20. To identify companies who transshipped oil through the Site to Cam-Or, EPA evaluated hauler records. Waste-in receipts for Cam-Or indicated that Arconic's predecessor Alcoa, Navistar's predecessor International Harvester, and Ford shipped crankcase oil to the Westville Cam-Or Site and transshipped through the A.A. Oil facility. In 2021, the Indiana Department of Environmental Management ("IDEM") identified additional A.A. Oil receipts from these three companies and the volume of waste.

21. As a result of contamination at the Site, EPA performed various response activities in accordance with CERCLA, including removal activities.

<u>Response Costs</u>

22. CERCLA Section 107, 42 U.S.C. § 9607, authorizes the United States and states to recover costs that they incur in response to the release and threatened release of hazardous substances, to the extent such costs are not inconsistent with the National Contingency Plan (the "NCP"). The statute imposes liability for such costs on certain classes of potentially responsible parties ("PRPs"), including current owners and operators of a facility from which there has been a release of a hazardous substance, parties that owned or operated a facility at the time of disposal of a hazardous substance, and parties that arranged for disposal or treatment of a hazardous substance at a facility owned by another party or entity.

23. EPA has incurred unreimbursed costs in connection with response actions at the Site, including the actions described above. Those unreimbursed costs include, but are not limited to: (i) costs of actions to monitor, assess, and evaluate the release or threatened release of hazardous substances at the Site; (ii) costs of performing and overseeing response activities at the Site; (iii) costs of enforcement activities relating to the Site and (iv) the statutory prejudgment interest on the response costs, which started accruing on March 31 2022.

24. As of April 2022, EPA has incurred at least $2.5 million in unreimbursed costs associated with response activities at the A.A. Oil Site.

25. The above-referenced response costs incurred by the United States qualify as costs of "response" and "costs of removal or remedial action incurred by the United States Government or a State" under CERCLA Sections 101(25) and 107(a)(4)(A), 42 U.S.C. §§ 9601(25) and 9607(a)(4)(A).

GENERAL ALLEGATIONS

26. The United States incurred the above-referenced response costs in a manner consistent with the NCP.

27. Each of the Defendants is a "person" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21).

28. The Site property is a "facility" within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a), because it is a site or area where a hazardous substance has been deposited, stored, disposed of, placed, or otherwise come to be located.

29. PCBs, TCE, benzene, lead, and other chemical compounds found at the Site are "hazardous substances," within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14).

30. There have been "releases" or "threatened releases" of "hazardous substances" at and from this "facility." CERCLA § 101(22), 42 U.S.C. § 9601(22).

31. The releases and threatened releases of hazardous substances at the Site have caused the United States to incur unreimbursed costs of response activities, including the actions described above.

32. Arconic, Navistar, and Ford each arranged by contract, agreement, or otherwise arranged for disposal or treatment of waste oil contaminated with hazardous substances at the Site.

33. In light of the foregoing, Arconic, Navistar, and Ford are liable to the United States in this action under CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Cost Recovery by the United States Under CERCLA Section 107, 42 U.S.C. § 9607)

34. Paragraphs 1-33 are realleged and incorporated herein by reference.

35. The Defendants are jointly and severally liable to the United States for all unreimbursed response costs incurred by the United States in connection with the Site pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a).

### SECOND CLAIM FOR RELIEF
(Declaratory Judgment for Recovery of Further Response Costs by the United States)

36. Paragraphs 1-33 are realleged and incorporated herein by reference.

37. The Defendants are liable to the United States for any unreimbursed further response costs that the United States incurs in connection with the contamination at the Site, not inconsistent with the NCP, pursuant to CERCLA Sections 107(a) and 113(g)(2), 42 U.S.C. §§ 9607(a) and 9613(g)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America respectfully request that this Court:

1.      Enter judgment in favor of the United States and against the above-named Defendants, jointly and severally, for all response costs incurred by the United States, as well as prejudgment interest, for response actions in connection with the Site;

2.      Enter a declaratory judgment in favor of the United States and against the above-named Defendants for any unreimbursed further response costs that the United States incurs in connection with the Site, not inconsistent with the NCP;

3.      Award the United States its costs of this action; and

4.      Grant such other and further relief as the Court deems just and proper.

FOR THE UNITED STATES OF AMERICA:

February 13, 2024
Date

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


s/*Samantha M. Ricci*
SAMANTHA M. RICCI
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611


ZACHARY A. MYERS
United States Attorney
Southern District of Indiana

J. TAYLOR KIRKLIN
Assistant United States Attorney
Southern District of Indiana


OF COUNSEL:

Sophie Grueterich, Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, IL 60604